! .WOODARD, Judge.
In a mandamus action, the trial court issued various orders in relation to the Mayor of Sicily Island, Louisiana, including holding her in contempt of court. We are asked to decide whether some of the trial court’s decisions were erroneous. Finding them to be such, we reverse.
This appeal concerns two mandamus actions. On January 15, 1999, Mr. Tim Ford and Ms. Laura Evans brought the first mandamus action against Mayor Anne Wy-coff, in her official capacity as Mayor of the Village of Sicily Island, Louisiana (the Village).
*835 In the first mandamus action, they sought orders, directing the Mayor as follows:
1. To do her duty and allow Lora Evans to attend the Council Meetings as a Council Member, vote and do ¡all lawful acts as a council member of the Village of Sicily Island, Louisiana. Further the Mayor should be permanently enjoined from preventing Lora Evans from serving as a Council member until Lora Evans is properly removed as a Council member and attending meetings, voting and performing all lawful duties as a Council member.
2. That she be ordered that Chief Belling is still the Police Chief and permanently enjoined from interfering with his duties, use of police car, keys to police station and anything else to interfere with the Police Chiefs duties until such time as Chief Belling is properly removed from office.
3. Be enjoined from appointing others to act as police chief without council approval; allowing others to drive the police car and have access to the police department and records. A Mandamus should issue herein directing that the Mayor cannot appoint police and/or police chief without majority vote of Council and can direct the police department.
4. Be enjoined from appointing Town Clerk and Auditor without Town Council approval and allowing them and others access to the Town’s Financial and other Records. A Mandamus should issue herein ordering that the Mayor cannot appoint Town Clerk and Auditor without approval of the Town Council.
5. Be enjoined and a Mandamus issued ordering Mayor to recognize Lora Evans as a Council Member.
6. A Mandamus and injunction should issue ordering the Mayor not to allow persons to use the police computer to access records, some possibly confidential.
I ¡.7. A Mandamus and injunctions should issue declaring David Nolan’s appointment as Police Chief null and void.
' Of the seven different items for which Mr. Ford and Ms. Evans sought the mandamus, only two concern us in this appeal. Namely, they endeavored to ensure that the Police Chief, Mr. Joseph Belling, would remain so unless the Mayor, with the majority of the town council’s approval, replaced him by appointment. Second, they requested that Mayor Wycoff be ordered to return to Chief Belling, the police car, the police station’s keys, police records, and the police computer. They also requested that she not interfere with his normal duties.
The trial court did not take any evidence on the first mandamus proceeding. After an in-chambers conference, .the parties entered into a stipulated settlement on the record, which subsequently, became a signed judgment. The trial court granted relief for the two items mentioned above that concern this appeal. Mr. Brent Gore represented Mr. Ford and Mr. Evans. Mr. James McElmore represented Mayor Wycoff..
On February 4, 1999, the . Village held a town.council meeting, discussing numerous issues. At all times prior to the second mandamus action tried on April 14, 1999, Mayor Wycoff thought that Mr. Albert E. Patten headed the utilities department for the Village; however, she was unable to find any official records appointing him as such, even though he had served in that position for many years.
On February 5, 1999, he went to the town hall and began shouting at the Town Clerk, Ms. Barbara Jackson, which several people witnessed. The police chief escorted him out of the building. After Mr. Patten’s departure, Ms. Jackson called the Mayor and reported what had happened. The Mayor then called Mr. George Griff-ing, the Village’s attorney and traffic court magistrate. Mayor Wycoff explained the incident and inquired if she could fire Mr. Patten based upon his conduct and other *836 problems she had noticed. Mr. Griffing advised her that she could if she had the approval of a majority of the Village’s Board of Aldermen. He did not tell her that she needed to call a meeting or executive session to formally consider this matter because, as he later testified, he knew of no statute requiring her to do so.
Mayor Wycoff called Mr. Johnny Weston, who had been temporarily appointed an Alderman. She testified that he gave his approval to fire Mr. Patten. Later in the second mandamus proceeding, Mr.Weston denied this approval, but he never raised 13the issue of his lack of permission during the March and April town meetings before his testimony.
The Mayor then asked Mr. Ford for his permission to fire Mr. Patten. He gave his permission in the presence of three witnesses at the Town Hall, who confirmed that at trial. Nevertheless, later at the second mandamus proceeding, he denied having given his permission. And like Mr. Weston, he never raised this issue in the Town meetings, in March and April, which preceded the second mandamus proceeding. The Mayor contacted a third Aider-man, Ms. Emma Hilliard, who also gave her permission to terminate Mr. Patten.
Based on the legal advice and the permissions which she believed that she had received, the Mayor sent Mr. Patten a letter that he was terminated and that Mr. Branson would serve as the utilities superintendent in his absence.
On March 31, 1999, Mr. Ford and Mr. Patten filed a second mandamus action against Mayor Wycoff. Although it included a different party, Mr. Patten, from the first mandamus action, the Plaintiffs filed it under the same number as the first. They sought orders as follows:
1.Directing the Mayor to do her duty and reinstate Albert E. Patten as the Head of Utilities of the Village of Sicily Island, with lost wages. Further, the Mayor should be permanently enjoined from discharging Albert E. Patten from his duties as Head of Utilities until Albert E. Patten is properly removed by unanimous Council decision.
2. That she be enjoined from making appointments without unanimous Council approval.
3. That she be enjoined from authorizing increase of salaries and compensation for appointed positions and Department Heads without unanimous Council approval.
4. That she be ordered to immediately produce records for Alderman/Council Members upon request.
5. That a Mandamus and injunction ordering the Mayor to correct the Resolution passed on January 22, 1999 to require three signatures per check: Mayor, Clerk, and Council member.
6. That she be held in contempt for violating her oath taken before this honorable court.
|47. That a mandamus and injunction should issue ordering the Mayor to recognize the Council approved Budget and to adhere to the constraints within the approved Budget.
8. That a Mandamus and injunction issue declaring the appointment of Russell Branson as Head of Utilities null and void.
9. That a Mandamus and injunction issue declaring the increase of salary to the clerk null and void.
Inter alia, the second mandamus hearing was to determine whether the Mayor should be held in contempt of court for allegedly refusing to follow state law in terminating city employees and other matters mentioned above. In response, the Mayor filed numerous exceptions and an answer. The police chief was not a party to either mandamus action, but Mr. Ford and Mr. Patten mentioned him in their action. The trial court ruled that Mr. Ford could maintain the action for Police Chief Belling because in its view, Mr. Ford would be guilty of malfeasance for not *837 doing so and exposed to prosecution by the district attorney.
During this hearing, Mr. Ford and Mr. Patten did not call the trial judge as a witness to establish reasons why Mayor Wycoff should be held in contempt of court for her'actions. Instead the judge, who had presided over the first mandamus action, in an apparent attempt to establish that the Mayor had knowingly violated her previous order, essentially sua sponte, stated her recollection as to the Mayor’s agreements in the prior proceeding and, then, used that knowledge as a basis for her decision:
THE COURT: Well, I had a transcript prepared of what happened that day, and under oath you [the mayor] tell me and I asked you did you have any questions. I’m going to — I say to Mr. McLemore, “All right: • Mr. McLemore, I think at this point now [sic] has reviewed with you the applicable statute that was in question. He’s answered all your questions about the statutes?” and you tell me “Yes.”
[[Image here]]
MR. LEAVOY [Mayor Wycoffs counsel]: Judge, you asked, and I don’t have the transcript. I’m just trying to remember what you just said.
THE COURT: Okay. This is what I said, all right. I said to the mayor, “All right.” I tell everybody they can have a seat; “I’ll start with you, Mayor Wycoff. You heard the stipulations that were read into the record by your attorney, Mr. McLemore. Did you?” She says “Yes.” I Issay, “All right. Are you in agreement with the stipulation?” She says ‘Yes.” Then I say, “All right. Mr. McLemore, I think at this point now has reviewed with you the applicable statutes which were in question.”
MR. LEAVOY: Correct.
THE COURT: “He’s answered all your questions about these statutes?” and she says, “Yes.” Then I review with Mr. Ford has his attorney reviewed with him the applicable statutes.- He says, “Yes.” Then I go over, I think, with Ms. Evans did she heard [sic] the stipulation into the record and has her attorney reviewed with her the applicable statutes that apply to the governing of the village of Sicily Island.
MR. LEAVOY: Yes, ma'am.
THE COURT: They all say ‘Yes.” So Mr. Leavoy, that [sic] one of the specific things that this Court asked them to do before they came to court that day.
MR. . LEAVOY: I understand, Judge.
The judge made additional references to the first mandamus action. The Mayor’s counsel even commented that the absence of a transcript of the first proceedings posed a problem for the court “because it puts the Court in a situation where both or [sic] Mr. McLemore and Mr. Gore and possibly even the Court, as for the contempt hearing, Judge, would be witnesses.”
The trial court issued oral reasons for judgment, which were later reduced to a written judgment. Its provisions are that:
1. Mayor Wycoff is to reinstate Albert Patten as head of the Utility department for Sicily Island and the May- or is enjoined from discharging Mr. Patten from his duties as head of utilities until Albert E. Patten, in the future if this should occur is properly removed at a public meeting of the Town Council of Sicily Island by a majority of the council members. In addition, the Town of Sicily Island is ordered to pay Mr. Patten his salary of $950.00 for the months of February, March, and April through the date he is legally terminated.
2. Mayor Anne Wycoff is further enjoined from appointing or terminating any department heads, the Village attorney, the police chief or the village clerk without the majority vote of the village council at a public meeting to be conducted.
*838 |fi3. Mayor Anne Wycoff is enjoined from authorizing the salary increase of any department head or appointed position without the approval of the Board of Alderman in accordance with La.R.S. 33:404.1 at a public meeting wherein the minutes of such meeting indicate that she was authorized to do so.
4. Mayor Anne Wycoff shall immediately produce any and all records which were requested by Alderman Tim Ford in his attorney’s March 8, 1999 letter. She is further ordered to provide access to the public records of the Village of Sicily Island to all council members during regular working hours whether she is present or not, and that she instruct the village clerk to also allow such access.
5. Petitioners writ of mandamus insofar as to the correction of the January 22, 1999 resolution to require three signatures on the checks is denied.
6. Mayor Anne Wycoff reimburse the Village of Sicily Island $548.30 per month or any amounts it paid in salary to the village clerk, Barbara Jackson, over $1,200 per month for the months of January, February, March and April 1999. It is further ordered that the Clerk’s salary shall be reduced to $1,200 per month.
7. The appointment of Mr. Russell Branson to head of The Department of Utilities is hereby declared null and void, and Mayor Wycoff is ordered to recognize and so inform Mr. Russell Branson that he is not the head of the Department of Utilities and that Mr. Albert Patten is.
8. A mandamus issues [sic] ordering Mayor Wycoff to recognize the 1998 through 1999 budget that was previously adopted by the Council prior to January 1, 1999. The Court spe- , cifieally finds that there were minutes in existence wherein the council ratified that budget. Those minutes were in possession of the Town of Sicily Island at the Town Hall prior to January the 1st, 1999 when May- or Wycoff took over.
9. Mayor Anne Wycoff is again ordered to not interfere with the duties of Chief Bellings. Further, counsel for Mayor Anne Wycoff is instructed to review with her La. R.S. 33:404 and the applicable attorney general opinions, specifically 94-313, 93-446, 87-332 and 86-589.
10. Mayor Anne Wycoff conduct the business of the Village of Sicily Island in an appropriate manner and to comply with the Lawrason Act and the Open Meetings Law.
11. Mayor Anne Wycoff deliver the gun, which was the subject of a criminal investigation to the Sicily Island Police Department by |7April 20, 1999 to be locked up by Chief Billings in the appropriate evidence locker.
12. Mayor Anne Wycoff pay attorney fees in the amount of $750 for violating the public records statute.
13. Mayor Anne Wycoff pay all costs of this proceeding.
14. Mayor Anne Wycoff is held in contempt of court, is to pay a fine of $200, to serve one day in the parish jail and to perform fifty hours of community service in the Village of Sicily Island through the Sheriffs Department to be done within thirty days from April 14,1999.
After the trial court signed the judgment, Mayor Wycoff filed a petition for a suspensive appeal. The Mayor argued that she should be exempt from having to file a bond, pursuant to La.R.S. 13:4581. The trial court granted the appeal, but required the Mayor to file a $6,000.00 appeal bond.
ASSIGNMENT OF ERRORS
The Mayor contends that the trial court committed error:
*839 1. By presiding over the second mandamus action, after she made herself a witness as to the first mandamus action.
2. When it ordered Mayor Wycoff be held in contempt.
3. When it ordered Mayor Wycoff to personally reimburse the Village of Sicily Island “$548.30 per month or any amounts it paid in salary to the Village Clerk Barbara Jackson over $1,200.00 per month for the month of January, February, March, and April 1999.”
4. When it ordered Mayor Wycoff to personally pay all costs of the proceeding related to (presumably) the second mandamus action.
5. When it ordered Mayor Wycoff to personally pay attorney’s fees in the amount of $750.00 for violating the public records statute.
6. When it denied Mayor Wycoff s petition that she be granted a suspen-sive appeal without having to post a bond.
7. When it “again” ordered Mayor Wy-coff “not to interfere with the duties of Chief Belling.”
|s8. When it ruled Mayor Wycoff illegally authorized and/or granted a salary increase to the Town Clerk.
9. In failing to cast all court costs 'against Plaintiffs.
LAW
Because of our disposition of the assignments of error below it is unnecessary to discuss assignments of error numbers eight and nine.
The TRIAL Judge—a Witness?
The Mayor contends that the trial judge made herself a witness in these proceedings. She made reference during the mandamus proceedings to an earlier mandamus action, occurring several months before, and made comments concerning exactly what had happened in the first mandamus proceeding.
Our law prohibits a judge from appearing as a witness in the ease over which she is presiding.[1] To violate this rule, it is not necessary that the judge actually be sworn as a witness and formally testify. Statements from the bench of a testimonial nature during the presentation of evidence may violate the prohibition.[2] However, the trial judge in this case had the authority to take judicial notice of the record of the earlier proceedings before her.[3] We find that her comments concern matters regarding the earlier proceedings, of which she was a part, and were not in the form of testimony, but simply her recollection of facts concerning the Mayor in the' earlier mandamus proceeding. Accordingly, we find this assignment of error is to be without merit.
The Mayor—in Contempt of Court?
The trial court found the Mayor to be in contempt of court. The Mayor contends that this ruling is in error, as there was no evidence of direct contempt, nor does the record support that she committed a constructive contempt.
The trial court stated, in part, in its oral ruling: “In addition, Mayor Wycoff is held in contempt. I’m ordering her to pay a fine of $200, to serve one day in the parish Injail. In addition, to perform 50 hours of community service through the Sheriffs Department in the Town of Sicily Island. And that’s to bé done within 30 days of today’s date. All right.”
Whether the Mayor was in direct contempt or constructive contempt of court, the trial court was statutorily required, as *840 part of its contempt order, to “recit[e] the facts constituting the contempt.”[4] This, the court did not do. Instead, the basis for its ruling appeared to be its contempt for Mayor Wycoff. For example, we quote with disfavor one of the comments the court made, during the Mayor’s testimony on the record, evidencing this disdain:
And then what’s going to happen is we’re going to have a dictatorship instead of a democracy in each little town in this parish or elsewhere.
The evidence in the record indicates that the Mayor had not acted on her own, as a dictator presumably would, but had appropriately followed the city attorney’s advice on the procedure to be used in firing Mr. Patten. Furthermore, we find no testimony as to the Mayor’s specific understanding of the law, nor is there any evidence adduced of her intent to disobey a court order.
Consequently, it is impossible for us to determine the court’s factual basis for the finding of contempt, nor may we presume to be a mind reader of the trial court to find a basis for the contempt ruling.
Because of the court’s procedural defect in confecting its contempt order, we reverse it and set it aside.
Must the Mayor Personally Reimburse the Village?
The Mayor argues that the trial court erred when it ordered her to personally reimburse the Village “$548.80 per month or any amounts it paid in salary to the village clerk Barbara Jackson over $1,200 per month for the months of January, February, March, and April 1999.” In its oral reasons for judgment, the court stated:
Next, now here the Court’s got two choices. I can either penalize Mrs. Jackson for paying herself what the Clerk — what the Mayor told her to pay, or I’m going to have to penalize the Mayor for doing linsomething that I think she’s improper — was improper, Mr. Leavoy. So What I’m going to do, is order the Mayor to reimburse the Town of Sicily Island the sum of $548.30 for the months of January, February, March and April, if Ms. Jackson’s salary has been paid as of April.
In other words, I’m trying to say any checks that Mrs. Jackson has that exceed $1,200 that she received, not that were paid to an insurance company, because it’s my ruling that payments to an insurance company is not salary that was paid directly to the Clerk. I specifically find that the Town Council did not authorize a payment of anything other than $1,200 in salary at any board meeting. And I find that the Mayor violated R.S. 33:404.1 by increasing Mrs. Jackson’s salary that she actually received from $1,200 to $1,748.30. In other words, once again, the $548.30 that was previously paid to an insurance company on behalf of Ms. Perry for insurance coverage, there was never any authorization that told the Mayor she could on her own, decide to pay that $548 directly to Ms. Jackson because Ms. Jackson decided not to take insurance.
Ms. Jackson’s total monthly compensation was $1,748.30; $1,200.00 represented her salary, and $548.30 represented her monthly insurance premium. As Ms. Jackson’s husband’s insurance provided coverage for her, she rejected the insurance coverage. Acting on the advice of the Louisiana Municipal Association or the Legislative Auditor’s Office, the Mayor authorized Ms. Jackson to receive the $548.30 per month as part of her salary. The trial court held that this represented an increase in salary that was not approved by the Village’s Board of Aider-men, pursuant to La.R.S. 33:404.1. This is error because the insurance premium constitutes a part of her total compensation.[5] Furthermore, there is no law that we can *841 find that authorizes a trial court to administer such a remedy.
The Mayor, acting within the scope of her authority under La.R.S. 33:404 to direct the administration of the city government, in good faith, made a discretionary decision to pay Ms. Jackson’s compensation. Her decision was reasonable under the circumstances. Accordingly, we reverse that portion of the trial court’s order that directs the Mayor to personally reimburse the city $548.30 per month for the months that Ms. Jackson received her insurance premium compensation as part of her salary.
| ti Must the Mayor PeRsonally Pay All Costs?
The Mayor contends that there is no legal authority for the trial court’s ruling, ordering the Mayor to personally pay all costs of the proceedings. The court held:
In addition, Mayor Wycoff is cast with all costs of this proceeding. The Court would note that earlier the Court ordered the Town of Sicily Island to pay the costs of the first proceeding in hopes that the parties would work out their problems and perhaps it was a learning process, but in the Court’s opinion, it’s no longer a learning process for Mrs. Wycoff. i
As we have reversed the decisions of the trial court, we are authorized pursuant to La.Code Civ.P. art. 2164 to fix lower court’s costs as we deem equitable. Accordingly, we reverse the portion of the trial court’s judgment that holds the May- or personally liable for the costs of the proceedings below, and in this court, and assess the costs against the Appellees.
Must the MayoR Personally Pay Attorney’s Fees?
The trial court ordered that the Mayor personally “pay attorney’s fees in the amount of $750.00 for violating the public records statute.” The Mayor argues that the record does not support such an award. The trial court said:
All right. In addition, I’m going to order Mayor Wycoff to pay attorney fees of $750.00 to Mr. Tim Ford for failing to provide all of the requested records in a letter from Mr. Ford’s attorney, Mr. Gore, dated March the 8th, 1999. Mr. Griffing testified and I think his records show that no response was made by him as Town Attorney until March the 19 th. And I would note for the record that as of March the 19 th, Mr. McLemore was counsel of record. I have been able — I have not found any motion where Mr. McLemore withdrew as counsel of record in the file. Therefore, there would be more than, three days that would have elapsed from the time that the letter was actually provided to her, and I’m giving a leeway of 11 days from the date of the letter. I find that three days did elapse.
A careful review of the March 8, 1999 letter from Mr. Ford’s attorney, Mr. Gore, establishes that it did not specifically request an inspection of the records mentioned in the letter. In part, the letter simply asks Mr. McLemore “where are the following records?” Then it lists certain records. Presumably, a response from Mr. | ^McLemore that the records were in the city offices would have satisfied this question. Although, Mr. McLemore represented the Mayor in the first mandamus proceeding, there is no evidence that he would continue to represent her following the conclusion of the first proceeding. Thus, even had Mr. Gore’s letter specifically requested access to the records, it could not be construed as having been properly addressed to the “custodian” of the rec-brds, namely the Mayor, in order to have the benefits of La.R.S. 44:31 to inspect public records. Ultimately, Mr. McLe-more gave the letter to the Mayor, who then passed it onto the Village’s attorney, Mr. Griffing, for a response. Mr. Griffing responded to Mr. Gore’s letter on March 19, 1999. In his letter, Mr. Griffing failed to respond to Mr. Gore’s inquiry regarding the listed records’ location. Further, Mr. *842 Ford, as a member of the Board of Aider-men for the city, had access to the city’s records any time that he wanted to view them.
Under these circumstances, the trial judge’s award of $750.00 attorney’s fees, personally, against the Mayor, for violating the public records statutes, La.R.S. 44:1 et seq., cannot stand. In order for a person to have the benefits of the three-day time limit provided in La.R.S. 44:32(D) and in order for a custodian to respond to a records request, as the trial judge alluded to here, the request must specifically state a request to inspect the records, and it must be addressed to the records’ custodian. Neither happened. Thus, the award of $750.00 in attorney’s fees, against the Mayor, personally, is reversed.
Must the MayoR Post a Bond for the Appeal?
The Mayor urges that the trial court’s ruling that she must post a bond for the suspensive appeal was legally erroneous. We agree.
La.R.S. 13:4581 states:
State, parish, municipal boards or commissions exercising public power and functions, sheriffs department, and law enforcement districts, and the patient’s compensation fund, or any officer or employee thereof, shall not be required to furnish any appeal bond or any other bond whatsoever in any judicial proceeding instituted by or brought against them, that arise from activities within the course and scope of their duties and employment.
|13As the elected Mayor of the Village, Mayor Wycoff is a voting officer of a municipal board, the Village’s Board of Aider-men, which routinely meets to conduct the city’s business.[6] As such, she is exempt from having to post an appeal bond for a suspensive appeal, and the trial court erred in requiring her to do so. Accordingly, we reverse that ruling.
The Trial Court’s Orders to the Mayor about Chief Belling
The trial court ordered that the Mayor was “not to interfere with the duties of Chief Belling.” As Chief Belling was not a party to the litigation, the Mayor contends that this trial court ruling was in error. In her oral reasons for judgment, the court ruled:
And I note that in the prayer, there’s no request that Mayor Wycoff be ordered not to interfere with the duties of Chief Bellings. However, I’ve previously ordered her not to do so. Once again, I’m ordering her not to interfere with the duties of Chief Bellings. And specifically, Mr. Leavoy, I want you to review with her Attorney General opinions that are located under R.S. 33:404, “Duties of Mayor”, specifically Attorney General opinion 94-313. It talks about the budget. Final authority for hiring and firing police officers which is found in Attorney General opinion 93-446. And specifically Attorney General opinion 87-332 that says the Mayor cannot require the Chief of Police to keep a daily report or log of events occurring within the Police Department. In addition, Attorney General opinion 86-589, that says the Mayor does not have authority to control expenditures of the Police Department, etc., etc.
The Mayor is the chief of police’s statutory supervisor, as the police chief is not elected in this community.[7] The legislature has given her the statutory authority to supervise and direct the administration and operation of the police department.[8] Aside from the fact that the police chief was not a party to this second mandamus action, the trial court’s order to the Mayor “not to interfere with the police chief’ is legally erroneous as contrary to the clear authority granted by the legislature to the *843 Mayor to |14supervise the Village’s police department’s management. This part of the trial court’s decision is reversed.
CONCLUSION
Those portions of the trial court’s decision appealed from are reversed with the exception of the issue of the trial judge having testified as a witness. The Appel-lees are cast with all costs of the appeal.
REVERSED.
PICKETT, J., concurs in the result.

. La.Code Evid. art. 605; See also the Fed.R.Evid. 605.

. See the Author’s Notes following La.Code Evid. art. 605.

. La.Code Evid. art. 201; State v. Valentine, 397 So.2d 1299 (La.1981).

. La.Code Civ.P. art. 223 and 225(B).

. La. Atty. Gen. Op. No. 91-314, August 28, 1991.

. La.R.S. 33:405(A)(1).

. La.R.S. 33:404(A)(1).

.Id.